Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 4111 | **DATE** | 6/7/2001 |
| **CASE TITLE** | KATHERINE TRAHARNE vs. WAYNE SCOTT FETZER COMPANY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The Court affirms and adopts Magistrate Judge Thomas Rosemond's orders granting defendant's motion to bar testimony of plaintiff's expert Greg Kaplan [51-1] and granting in part and denying in part defendant's motion to bar testimony of plaintiff's expert Michael Morse [52-1]. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUN 11 2001 | |
| | Notified counsel by telephone. | date docketed | 93 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | |
| | | 01 JUN 11 PM 3:15 | 6/8/2001 date mailed notice |
| CG | courtroom deputy's initials | | CG mailing deputy initials |
| | | Date/time received in central Clerk's Office | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATHERINE TRAHARNE,
Administrator of the Estate of
KENNETH WILLIAM TRAHARNE,
Deceased,

    Plaintiff,

v.

WAYNE SCOTT FETZER COMPANY,

    Defendant.

Judge Ronald A. Guzmán

97 C 4111

**DOCKETED**
JUN 1 1 2001

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on plaintiff Katherine Traharne's objections to Magistrate Judge Thomas Rosemond's Order granting defendant's motion to bar testimony of plaintiff's expert Greg Kaplan ("Kaplan"), and both parties' objections to Magistrate Judge Rosemond's Order granting in part and denying in part defendant's motion to bar testimony of plaintiff's expert Michael Morse ("Morse"). For the reasons set forth below, the Court rejects plaintiff's objections and accepts Judge Rosemond's findings with respect to the testimony of Greg Kaplan, and the Court rejects both parties' objections and accept Judge Rosemond's findings with respect to the testimony of Michael Morse.



I.  **Defendant's Motion to Bar Testimony of Greg Kaplan**

A magistrate judge's ruling on a non-dispositive matter may only be reversed on a finding that the order is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). Pretrial motions are considered non-dispositive of litigation and are reviewed by the district court under the more lenient clearly erroneous standard. *United States v. Premises Known As 281 Syosset Woodbury Road*, 862 F. Supp. 847, 851 (E.D.N.Y. 1994), *aff'd*, 71 F.3d 1067 (2d Cir. 1995). "A finding is clearly erroneous when although there is enough evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

Plaintiff, as administrator of her deceased brother's estate, filed a products liability action against defendant, a manufacturer of a submersible pump, charging that the pump was negligently designed and that the negligent design caused the death of her brother. The tragic accident took place on June 13, 1995 when plaintiff's brother suffered a fatal electric shock while attempting to use a sump pump to drain rainwater from a swimming pool.

Plaintiff pursues two theories of liability: 1) negligent manufacture of the submersible pump; and 2) defectively design of the submersible pump. With respect to the second theory of liability, plaintiff asserts that there should have been a supplemental restraint system on the pump to protect against the possibility that the pump's strain relief clamp would fail and allow water to enter the pump, become electrified, and expose an individual using the pump to electric shock. To bolster this theory plaintiff hired Kaplan to design such a supplemental restraint system for the pump and provide a cost estimate

2

for the manufacturing and shipping of the new part. Kaplan is the owner and president of K&C Machining, Inc., a precision machining company specializing in the production of close tolerance aluminum and high-alloy components for aerospace defense systems and telecommunications. Plaintiff offered Kaplan as an occurrence witness because he participated in the design of the proposed supplemental restraint. Kaplan was prepared to testify that the proposed supplemental restraint designed by him could be manufactured at a cost of fifteen cents per unit. Prior to trial defendant sought to bar Kaplan's expert testimony challenging his credentials and opinion.

Plaintiff objects to the characterization of Kaplan as an expert and to the characterization of his testimony as an "opinion." Instead, plaintiff suggests that the process used by Kaplan to design the supplemental restraint is factual testimony and Kaplan is an occurrence witness. This Court rejects plaintiff's assertions that Kaplan is an occurrence witness. Kaplan never examined any of the case materials or even the pump's existing strain relief clamp. Kaplan created an alternative design with an additional supplemental restraint system, testified that it would cost only fifteen cents per unit to manufacture this supplemental restraint, and plaintiff intends to use this alternative design as the standard to which defendant's pump should have conformed. Only Kaplan has the ability to testify about the alternative design. The purpose of the alternative design evidence and Kaplan's testimony is to allow the jury to compare the adequacy of defendant's design with Kaplan's and come to the conclusion that Kaplan's design significantly reduces the risk of an electrocution accident with only minimal additional costs. Therefore, Kaplan is being tendered as a design engineering expert witness and a cost-benefit analysis expert and this Court will view him as such.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. Fed. R. Evid. 702.

A witness may offer an expert opinion only when he or she draws on specialized "knowledge, skill, experience, training or education." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999), *cert. denied*, 529 U.S. 1067 (2000). To determine if a witness qualifies as an expert a court should compare the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness' testimony. *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990).

In addition to being a qualified expert, the subject of the witness' testimony must be scientific knowledge. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). *Daubert* further suggests that proposed expert testimony must be derived by the scientific method and must assist the trier of fact in understanding or determining a fact in issue in the case. *Id.* at 590-91. Therefore, when faced with the proffer of expert testimony a court must undertake a two-prong analysis. First, the court must consider whether the proffered testimony has been subjected to the scientific method, and second whether the testimony will assist the trier of fact in understanding evidence or determining a fact in issue. *Deimber v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 344 (7th Cir 1995).

4

This Court agrees with Magistrate Judge Rosemond's finding that Kaplan was not qualified as an expert and his testimony was not derived by the scientific method and would not assist the trier of fact in determining a fact in issue in this case.

Kaplan does not have any engineering design or physics degrees and has had no training in mechanical or electrical engineering. Kaplan, in fact, is not even a college graduate. He completed two years of general studies at the University of Illinois. Kaplan has not published or lectured on any subject involving sump pump design or safety. Kaplan also has no experience or familiarity with the sump pump manufacturing industry. He has never before designed a sump pump or a sump pump strain relief system.

Even more troubling than Kaplan's lack of qualifications are the methods he used to reach his conclusions. Kaplan did not evaluate defendant's sump pump to determine what caused the pump's strain relief mechanism to fail. Kaplan even admitted that "he was retained to make a clamp. He was not brought into the case to evaluate . . . the existing unit." (J. Rosemond's Order at 6.) Therefore, Kaplan's analysis assumed that the existing strain relief mechanism was defective. However, the precise issue in this case was whether the existing strain relief clamp was defective and if Kaplan's testimony is based on the assumption that it was, then he will obviously not aid the jury in determining the issue involved in this case.

After Kaplan designed his strain relief clamp, he did not validate it through accepted scientific testing methods and procedures. Magistrate Judge Rosemond made the following findings regarding Kaplan's "test":

5

> Mr. Kaplan tested the design by dropping the sump pump ten or more times "from a height greater than two feet . . ." In other words, he held the sump pump by the power cord and let three feet of cord slip through his hand as the unit dropped. This "test" revealed no movement of his designed clamp. In other words, Mr. Kaplan's design pulled all external forces away from the watertight seal.

(*Id.* at 7.) Kaplan's study was not based on commonly accepted scientific testing procedures and analysis. His "test" and conclusions, according to this Court, are too simple and unsubstantiated to be considered reliable. He also did not conduct similar tests on defendant's sump pump.

Another component of Kaplan's testimony was his analysis that an alternative strain relief mechanism could be installed with minimal costs to the defendant. Again this testimony was out of the realm of Kaplan's expertise. Kaplan is the President and Owner of K&C Machining, Inc., a precision machining company. He has no specialized training, education, or experience that would qualify him as a cost analysis expert. Magistrate Judge Rosemond held that "holding the status of Chief Executive Officer of a successful business enterprise does not in and of itself make an individual a cost estimate or cost analysis expert. His knowledge and experience is perforce limited to that of his own company." (*Id.* at 8.) Kaplan based his cost analysis on the "per unit" manufacturing costs of his own business but never offered any explanation or conducted any research regarding the relationship between his company's costs and defendant's. His cost analysis, based on his own company, is therefore unreliable and irrelevant.

In addition to his lack of qualifications and unreliable methodology, there were other problems with Kaplan's proposed testimony. Magistrate Judge Rosemond concluded with the following analysis:

> Finally, it must be noted that much too much of the unusual surrounds Mr. Kaplan and his assigned task for this case. It is unclear as to whether or not he has ever billed plaintiff's counsel for his services. The amount of hours expended by him in "designing" and "testing" his strain relief device is less than 30 hours. Mr. Kaplan did not prepare his own report. Plaintiff's counsel prepared the report and presented it to Mr. Kaplan for signature. The ostensible non-reliability of Mr. Kaplan's report and the opinions expressed therein severely taint his status as a qualified expert. The manner in which his expert report was prepared seriously undermines his ability to speak authoritatively about how power cords for submersible pumps should be safeguarded against misuse, or how his design safeguards against misuse. The flaws in his report preparation, the gratuitous nature of his services, and the minuscule amount of time expended in analysis, testing, and thought impact more than the weight to be given his testimony and opinions. They impinge upon his qualifications as an expert.

(*Id.* at 15-16.) Kaplan's testimony essentially involves either evidence that he is not qualified to have an opinion on or evidence derived from tests that are suspect in their scientific accuracy. Therefore, this Court must agree that his testimony will not assist the jury in determining any issue in this case. For the foregoing reasons, Magistrate Judge Rosemond's Order granting Defendant's Motion to Bar the Testimony of Greg Kaplan is affirmed.

## II. Defendant's Motion to Bar Testimony of Michael Morse

Magistrate Judge Rosemond essentially denied defendant's motion to bar the testimony of plaintiff's expert Michael Morse except for the portion of Morse's testimony referring to Kaplan's alternatively designed pump based on the fact that Kaplan's pump and testimony are not admissible.

Determining admissibility of expert testimony under Federal Rule of Evidence 702 is a two-prong analysis. The first prong states that "a witness qualified as an expert

7

by knowledge, skill, experience, training, or education, may testify as to matters involving scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. The second prong of Federal Rule of Evidence 702 requires that the evidence being testified to will "assist the trier of fact in understanding the evidence or determining a fact in issue." *Porter v. Whitehall Labs. Inc.*, 9 F.3d 607, 614 (7th Cir. 1993).

With respect to the first prong, Morse's expert qualifications, Magistrate Judge Rosemond found the following:

> Dr. Michael S. Morse is an Associate Professor of Electrical Engineering at the University of San Diego in California. He has a doctorate in Engineering from Clemson University in Clemson, South Carolina; a Master of Science and a Bachelor of Science from Tulane University in New Orleans, Lousianna; and a law degree from the University of San Diego. He is a member of several honorary societies, such as H.K.N., an Electrical Engineering Honor Society; Sigma Xi, a research Honor Society; and Tau Beta Pi, an Engineering Society.
> Dr. Morse has expertise in "electrical shock injury, electrical safety, electrical injury, effects of electricity on the human body, failure at the human/machine interface, and biomedical device failure (electro-mechanical)." Dr. Morse has been a consultant in "several electric shock injury, electrocution, and electrical safety cases." He has also been a consultant in "medical products failure cases involving electropapillotome, infusion pump, and thermal blanket."
> Dr. Morse has been a prolific writer with over 20 papers and publications to his credit. Not all of his published works have been in the area of electric shock injury, however.
> Dr. Morse has qualified and testified as an expert witness in several federal and state courts. He qualified as both a Biomedical and Electrical Engineering expert in the United States District Court for the Middle District of Florida, and testified on the subject of "Electrical Technology." In the United States District Court for the Eastern District of Louisiana, Dr. Morse qualified as an expert witness on "the effects of electricity on the human body." In other federal and state courts, Dr. Morse has testified regarding 1) electrical product failure and resultant injury from an electrical connector, 2) electrical injury incurred while installing traffic lights, 3) injury from an electric arc, 4) electrical contact with overhead power lines, 5) the effects of electricity on the human body with regard to pain and suffering; and 6) the failure of a "man-lift" with emphasis on design, human factors and electrical circuitry.

(J. Rosemond's Order at 11-13.) With all of his education and experience it is clear that Morse is a qualified expert on the subject of electrical accidents. Indeed, defendant does not challenge Morse's testimony based on lack of qualifications. Defendant challenges Morse's scientific methodology and lack of time spent and research conducted in reaching his conclusions. Defendant contends:

> Morse reached his opinions after spending only four hours reviewing documents in his office in San Diego. He did not inspect the sump pump or the short circuited extension cord involved in the decedent's accident. He did not review the Packer photographs and, in fact, was unaware that they even existed. Morse performed no testing, research, calculations, experiments, or analysis of any kind. In fact, he spent more time actually drafting his report (4.5 hours) than he did developing his expansive opinions.

(Def.'s Mem. Supp. Mot. Bar Test. Michael Morse at 4-5.)

The court must determine whether the proposed expert testimony pertains to scientific, technical or other specialized knowledge. Fed. R. Evid. 702. An expert's opinion must therefore be predicated on valid reasoning based on what is known, and supported by reliable methodology. *Kannankeril v. Terminix Int'l., Inc.*, 128 F.3d 802, 806-07 (3d Cir. 1997). It is not the court's duty to deny the admission of evidence because of factual inaccuracies and the court should only exclude the evidence if the expert is without sufficient grounds for his conclusion. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 746 (3d Cir. 1994). Factual inaccuracies are to be explored through cross-examination and go toward the weight and credibility of the evidence not admissibility. *See generally Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586-89 (7th Cir.), *cert denied*, 121 S. Ct. 311 (2000).

Defendant's main objections to Morse's testimony center around the short amount of time he spent studying the facts and documents in the case and the fact that he never personally examined the sump pump at issue. Although these are valid objections this Court believes that they are better explored on cross-examination. First, there is no requirement that an expert "personally perceive the subject of his analysis." *NutraSweet Co. v. X-L Eng'g Corp.*, 227 F.3d 776, 789 (7th Cir. 2000). Also, "shaky" expert testimony and testimony with a weak factual basis is better revealed through cross-examination and it is not an abuse of discretion to admit such testimony. *Daubert*, 509 U.S. at 596; *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549 (D.C. Cir. 1993).

Morse has offered essentially three main opinions in this case: 1) the design of defendant's CDU 800 sump pump is defective in that the strain relief mechanism is inadequate to secure the power cord in the watertight seal during "foreseeable" uses of the pump; 2) the breach of the watertight seal was what caused the electrocution at issue in this case; and 3) the decedent experienced considerable, tremendous, horrific pain as well as other extreme effects brought on by the electric shock including "neural stimulation" and "muscle contractions."

With respect to Morse's first opinion, he contends that a second safety measure on the submersible pump would have protected against the risk that the pump's power cord would disengage from the pump so that there would be a breach in the water tight seal and allow water to enter the pump while it was in operation. His opinion, although not based on examination of the pump, was based on documents given to him, his experience, specialized knowledge, academic training, and observations and research he has previously conducted with respect to his previous experience testifying in similar

10

trials. Defendant's insistence that Morse's conclusions are speculative simply because he did not examine the specific pump is misplaced. If Morse's conclusions are incorrect and his analysis is flawed, then it will be defendant's job to bring this out on cross-examination. However, it does not affect admissibility. *See In re Paoli R.R. Yard PCB Litigation*, 35 F.3d at 746.

Defendant next contends that Morse's opinion regarding causation is unreliable because he "failed to consider an obvious alternative cause of the decedent's electrocution – the short circuit in the extension cord." (J. Rosemond's Order at 25.) In fact, as Magistrate Judge Rosemond points out, Morse did consider the short circuit in the extension cord. *See id.* Furthermore, even if Morse was mistaken about a particular fact that again goes toward the evidence's weight and not its admissibility. (*See id.* at 26.)

Morse also provides testimony suggesting supplemental restraint design modifications and suggests that a ground fault circuit interrupter could have prevented the accident in this case. Magistrate Judge Rosemond pointed out several problems with this testimony. (*See id.* at 39, 40 ("Although he believes that a ground fault circuit interrupter should have been a part of the sump pump design, Dr. Morse performed no analyses of the feasibility or cost-effectiveness of incorporating this device into the defendant's Wayne Model CDU 800 sump pump.)) Magistrate Judge Rosemond concluded that although there are some problems with Morse's testimony his conclusions should be best analyzed by a jury. (*See id.* at 40.)

This Court agrees that *Daubert*'s deferential standard and Morse's extensive experience analyzing these types of accidents mandates admissibility of his testimony. If

11

this Court were to bar Morse's testimony simply because it felt that he did not observe proper methods while reviewing the sump pump, then this Court would be placing itself in the position of determining admissibility based on the Court's opinion that is conclusions are flawed. *Daubert* does not permit the Court to do this. If this highly qualified expert came to a flawed conclusion, then it is defendant's job to bring that out through cross-examination.

Finally, Morse's opinion that the decedent suffered ventricular fibrillation as a result of an electric current that passed through his heart and suffered a significant amount of pain and suffering is admissible. Defendant challenges these opinions as ignorant of the facts of the case. Again, however, Morse's opinions were based on his vast experience and education. In fact, with respect to these two opinions, Dr. Morse's experience in previous trials testifying to these exact matters suggests an even greater justification for admissibility. Therefore, Magistrate Judge Rosemond's Order denying in part and granting in part Defendant's motion to exclude the testimony of Dr. Morse is affirmed.

## Conclusion

For the foregoing reasons, the Court affirms and adopts Magistrate Judge Thomas Rosemond's orders granting defendant's motion to bar testimony of plaintiff's expert Greg Kaplan [docket no. 51-1] and granting in part and denying in part defendant's motion to bar testimony of plaintiff's expert Michael Morse [docket no. 52-1].

**SO ORDERED**  ENTERED: 6/7/01

HON. RONALD A. GUZMAN
**United States Judge**